UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

VICENTE RAMIREZ, JR.,          )
          Petitioner,          )
                               )
v.                             )          No. 2:11-CR-29
                               )          No. 2:13-CV-70
UNITED STATES OF AMERICA,      )
          Respondent.          )

**MEMORANDUM OPINION**

Vicente Ramirez, Jr. ("Ramirez" or "petitioner"), a federal prisoner, has filed a "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc.95].[1]  The United States has responded in opposition to petitioner's motion, [Doc. 104], and petitioner has replied to the government's response, [Doc. 107].  Based upon its review of the petition, the government's response, petitioner's reply, and the record of the prior proceedings, the Court has determined that an evidentiary hearing must be conducted as to Claim Three raised by petitioner, i.e., his claim of ineffective assistance of counsel for failure to file a motion to suppress.  The Court will appoint counsel to represent petitioner as to that particular claim and schedule an evidentiary hearing by separate order.  As to all other claims made in the petition, however, the Court has concluded that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and the motion will be DENIED as to those claims.  This memorandum opinion will, therefore, dispose of all claims raised by Ramirez in his petition except for the one on which an evidentiary hearing is granted.

**I.  Procedural and Factual Background**

Ramirez was charged in a criminal complaint filed on April 8, 2011, with conspiring to

---

[1]  All docket entry references are to case number 2:11-CR-29.

distribute and possess with intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, in violation of 18 U.S.C. §§ 846 and 841(b)(1)(A). [Doc. 1]. Criminal Justice Act Panel Attorney Stephen G. McGrath was appointed to represent Ramirez, [Doc. 6]. Ramirez and co-defendants Rene Salvador Rosales and Xiomara Merary Rosales were indicted by the federal grand jury on April 12, 2011. [Doc. 10]. Ramirez was charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine (Count 1), possession of 500 grams or more of cocaine with intent to distribute (Count 4), and possession of a firearm in furtherance of the drug trafficking crimes charged in Counts 1 and 4 (Count 5). [*Id.*] On June 2, 2011, retained counsel made an appearance in the case and moved to substitute counsel, [Docs. 32, 33], and an order was entered granting the motion. [Doc. 36].

On July 29, 2011, Ramirez pled guilty, pursuant to a negotiated plea agreement, [Doc. 37], to Counts 1 and 5 and the government agreed to dismiss Count 4 [*Id.*; *see* Doc. 38]. A presentence investigation report ("PSR") was ordered and sentencing was scheduled for November 28, 2011. The plea agreement contained the following stipulation of facts:

> 5.       In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.
>
> a)       Through the testimony of numerous witnesses, including co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that between approximately April 2007 through April 2011, in the Eastern District of Tennessee, and elsewhere, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and possess with the intent to distribute at least 5 kilograms but less than 15 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

2

b)    In January 2011, Texas Highway Patrol officers conducted a traffic stop on the defendant and an unindicted co-conspirator. The defendant was the driver of the vehicle and the unindicted co-conspirator was a passenger in a black Ford Crown Victoria with Tennessee tags. Upon being pulled over, the defendant told the officer that they were traveling from California to Tennessee. The defendant also told officers that he had sole custody of the vehicle from the time he left Tennessee until he arrived in California and on his way back to Tennessee until he was stopped in Texas by law enforcement. A subsequent search of the vehicle revealed approximately three kilograms of cocaine, wrapped in four bundles, and concealed inside a hidden compartment in the dashboard of the vehicle.

c)    The evidence shows that on March 2, 2011, a confidential informant, working at the direction of law enforcement, made a recorded call to co-defendant, Rene Salvador Rosales, to arrange the purchase of nine ounces of cocaine. The informant told Rosales that they would pay $3,500.00 for 4.5 ounces of cocaine and asked for the other 4.5 ounces to be fronted. Rosales agreed as long as the informant paid him back within eight days.

c)    The evidence shows that, on March 3, 2011, the same confidential informant, working at the direction of law enforcement, made a recorded phone call to Rosales. Rosales told the informant to go to Rosales' residence, located at 269 Brandonwood Drive, Johnson City, Tennessee, and pick up the cocaine. Rosales stated he would call the house and instruct someone to give the cocaine to the informant. The informant arrived at Rosales' residence and asked for Xiomara Rosales, Rene Rosales' wife. The informant asked Xiomara if the "Don" had called her. Xiomara said he did and she had the informant's "present". Xiomara then went to the basement to retrieve the nine ounces of cocaine and handed it to the informant. The informant gave Xiomara the $3,500.00 and explained that it was for half of the cocaine and that they would be paying Rosales the rest later. Xiomara told the informant to be careful when they left because they had been followed by a blue Honda.

d)    The evidence shows that on March 10, 2011, a confidential informant, working at the direction of law enforcement, made a recorded phone call to Rosales to arrange the purchase of 4.5 ounces of cocaine. The informant drove to Quiznos on Oakland Avenue in Johnson City, Tennessee, to meet Rosales. A few minutes earlier, a surveillance team observed a white Toyota

3

Avalon leaving the vicinity of Rosales' residence. Approximately eight minutes later, the white Toyota Avalon arrived at the same Quiznos. Rosales exited his vehicle and placed the cocaine in the informant's vehicle hidden inside a cup. Rosales and the informant went into the Quiznos and ordered food. The informant mentioned a friend that he was providing cocaine to and asked Rosales if he would speak to his supplier to see if he was willing to meet with the informant's friend. Rosales said he would ask his supplier, the defendant. The informant passed an envelope to Rosales containing the $3,500.00 for the 4.5 ounces of cocaine.

e)      The evidence shows that on March 30, 2011, a search warrant was executed at the residence of Rene Rosales in Johnson City, Tennessee. Law enforcement seized $5,000.00 in cash from the residence of Rosales on this date.

f)      Rosales identified the defendant as his source of supply for cocaine and stated he had purchased approximately 1.5 kilograms of cocaine from the defendant. The cocaine from the sales on March 3 and March 10, 2011 was supplied to Rosales from the defendant.

g)      On April 7, 2011, Rene Rosales, at the direction of law enforcement agents, met with the defendant at the defendant's residence located at 1401 Meadowbrook Drive, Johnson City, Tennessee. During the recorded meeting, the defendant stated he had just transported five kilograms of cocaine from California to Tennessee, and that he had one kilogram at his residence. During the conversation, Rosales was able to observe the one kilogram of cocaine referred to by the defendant inside the residence. The defendant stated the other four kilograms of cocaine were at another location approximately thirty minutes away. Rosales and the defendant discussed Rosales purchasing a half of a kilogram of cocaine for a friend. The defendant and Rosales then discussed the traffic stop that occurred in January 2011 in Texas. The defendant told Rosales during the recorded meeting that he intended to bring the three kilograms of cocaine seized in Texas to Tennessee to sell and that he was currently on bond in Texas. The defendant also stated he was planning on making another subsequent trip to California to bring back another five kilograms of cocaine to Tennessee to sell in the near future. The defendant told Rosales that he had been dealing in cocaine for the last four years.

h)      Later on April 7, 2011, Rene Rosales, at the direction of law enforcement agents, made a recorded call to the defendant to arrange the purchase of one kilogram of cocaine. The

4

transaction was to take place on April 8, 2011, at the defendant's residence in Johnson City, Tennessee.

i)       On April 8, 2011, prior to Rosales' scheduled arrival to purchase the one kilogram of cocaine from the defendant, law enforcement agents executed a federal search warrant at the defendant's residence located at 1401 Meadowbrook Drive, Johnson City, Tennessee. The defendant was then fully advised of his rights, and executed a Miranda waiver. During the search, agents located the one kilogram of cocaine that the defendant intended to sell to Rosales in the basement of the defendant's residence. The defendant acknowledged the location where the kilogram of cocaine was hidden in the basement of the residence. The defendant told agents he had an approximate additional 2.5 kilograms of cocaine and three guns at another location. The defendant described the guns as being two 9 mm handguns and an AK-47 assault rifle. The defendant agreed to show the other residence to agents and signed a consent to search form. The other residence was a trailer in Limestone, Tennessee, which was rented by the defendant and being used as a stash house. The defendant had a key to the trailer and allowed agents to enter and search. The defendant directed law enforcement where they would find the other kilograms of cocaine and the weapons. Upon searching this trailer, agents located the remaining kilograms of cocaine inside it, along with the two loaded handguns and the AK-47. Both of the 9 mm handguns were loaded and all three firearms were located in close proximity to the kilograms of cocaine. All of the cocaine and the all of the firearms located in the trailer were in the same bedroom. The bed in the bedroom had several cupboard type drawers built onto the headboard. The drawer on the left side of headboard contained the cocaine. The drawer to the right side of the headboard contained the two loaded 9 mm handguns. The AK–47 was found leaning against a wall in the corner of the bedroom in plain view. The defendant took sole responsibility for all the cocaine seized from his residence in Johnson City and the stash house in Limestone. The defendant then illustrated for law enforcement agents the process he used to "rebrick" his cocaine by breaking it up, adding a cutting agent and then recompressing it into a brick form. The defendant told law enforcement that his supplier would not sell less than two kilograms of cocaine at time to him, and that he did not personally sell less than a half of a kilogram of cocaine at a time. The total weight of all the cocaine seized from the defendant's residence and the stash house on this date was approximately four kilograms. Overall, the defendant agrees that he is responsible for the distribution and/or the possession with the intent to distribute at least five kilograms but less than fifteen

5

kilograms of cocaine during the time period of the conspiracy.
[Doc. 37 at ¶ 5].

Pursuant to the Court's order, the PSR was prepared and disclosed to petitioner on November 15, 2011. Based on a total offense level of 31 and a criminal history category of II, the guidelines range of imprisonment was determined to be 121-151 months on Count 1 and 60 months consecutive on Count 5, for a total advisory guidelines range of 181 to 211 months. A sentencing hearing was conducted on April 16, 2012,[2] and petitioner was sentenced to the statutory mandatory minimum of 120 months of imprisonment on Count 1 and the statutory minimum of 60 months of imprisonment consecutive on Count 5 (i.e., 180 months of imprisonment). [Doc. 66]. Judgment was entered on April 23, 2012, [Doc. 67], and there was no direct appeal. The instant §2255 motion was filed timely on March 1, 2013.

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability

---

[2]   The sentencing hearing was continued from November 28, 2011, to April 16, 2012, at the request of petitioner. *See* Docs. 52, 53.

of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be

established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III. Analysis and Discussion

Ramirez raises four broadly worded claims for relief in this § 2255 motion: (1) ineffective assistance of counsel due to counsel's failure to discuss the "safety valve" option; (2) ineffective assistance of counsel due to counsel's failure to investigate properly; (3) ineffective assistance of counsel due to counsel's failure to file a motion to suppress evidence; and (4) insufficiency of the evidence to support a conviction on Count 5, knowingly possessing a firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A). The Court will address each claim in turn.

### A. Claim One-"Safety Valve"

Scattered throughout petitioner's memorandum in support of his motion are several claims apparently related to his "safety valve" claim. First, he asserts that "counsel never discussed the Court's options of a 'safety valve' sentence under 18 U.S.C. § 3553(f)." He claims there was "no evidence that movant utilized a weapon in ANY form related to ANY drug transaction," there was no credible threat of violence, no death or serious bodily injury, no claim he was a manager or leader of a continuing criminal enterprise, and that he gave the government

all information and evidence concerning the offenses. [Doc. 96 at 2]. Second, petitioner asserts that counsel never discussed the guidelines range that applied to his case, only the statutory maximum and minimum.

To be eligible for a safety valve reduction below an otherwise applicable mandatory minimum sentence, a defendant must satisfy five criteria listed in § 3553(f). The same five criteria were copied verbatim in the United States Sentencing Guidelines ("USSG") in USSG §5C1.2. To be safety valve eligible, the defendant must show that he (1) does not have more than one criminal history point, (2) did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) he was not an organizer, leader, manager or supervisor of others in the offense; and (5) not later than the time of sentencing, he has truthfully provided to the government all information and evidence he has concerning the offense. 18 U.S.C. § 3553(f); USSG § 5C1.2. A defendant seeking a downward adjustment of a sentence has the burden of proving by a preponderance of the evidence his entitlement to the reduction. *United States v. Adu*, 82 F.3d 117, 123-24 (6th Cir. 1996) (citing *United States v. Rodriguez*, 96 F.2d 1031, 1033 (6th Cir. 1998) (rejecting contention that government has burden of proof on factual issues that could cause decrease in potential sentence)).

Petitioner's claim is flawed for an obvious reason. His entire argument is directed toward criteria 2, 3, 4 and 5, while ignoring the first requirement. The reason Ramirez ignores the first requirement is likewise obvious. Regardless of whether he meets the requirements of criteria 2, 3, 4 and 5, he does not meet the first. Ramirez had two criminal history points,[3] and for that

---

[3] In his reply memorandum, Ramirez claims counsel should have "challenged the two criminal history points" on the basis of USSG §4A1.2(c)(2), which provides that no criminal history points are assessed for certain enumerated "petty" offenses, or offenses similar to them. Petitioner's convictions for driving under the influence [PSR, ¶¶ 38, 39], clearly do not fall in that category. To the contrary, the Guidelines require that conviction for driving under the

reason alone, was not eligible for safety valve.  Therefore, as the government argues, regardless of whether counsel was deficient by failing to discuss safety valve with petitioner, petitioner cannot show prejudice under *Strickland*'s second prong, that is, he cannot show "a reasonable probability that, but for [counsel's omission], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[4]

As for petitioner's claim that counsel never discussed with him the guidelines range that applied to the case, the claim is clearly contradicted by the record in this case.  The Court will assume, for the purpose of deciding this claim, that counsel had a duty "to explain in detail the federal guideline system, at least a general sentencing range based upon counsel's experience." [Doc. 96 at 3].  The record, however, reflects that  that is exactly what counsel did.  During the change of plea hearing, petitioner testified under oath that he had read his plea agreement, that he understood its terms, and that he understood that the Court would decide his sentence only after a PSR was prepared and the Court had considered the 18 U.S.C. § 3553(a) factors, including his advisory guidelines range.  With respect to whether counsel had discussed the guidelines, the Court inquired, after advising petitioner that it must consider his advisory guidelines range: "Have you and your attorney talked about how these advisory guidelines apply to your case?" Petitioner's answer was an unequivocal "yes, sir."  [Doc. 99 at 21].[5]  Further bolstering the conclusion that counsel did, in fact, discuss the guidelines range with petitioner is petitioner's further testimony that he understood the information counsel had given him about his advisory

---

influence be counted.  See USSG § 4A1.2 cmt.n.5.

[4]  In a guilty plea context, the defendant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[5]  In his reply memorandum, document 107, petitioner asserts that counsel told him to "just agree with whatever the Court asks you", but that in actuality he never understood what was going on.  There is no evidence that that is the case but, in any event, a defendant's sworn admissions during a plea colloquy are binding upon him, *see Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999), and a defendant's "statements on the record during a plea colloquy that he . . . understands the nature and the consequences of the plea provide strong evidence that a plea was intelligent and knowing." *Boyd v. Yukins*, 99 Fed. App'x 699, 703 (6th Cir. 2004).

guidelines range "is simply [counsel's best estimate as to that range]" and that his "attorney's estimate as to [his] advisory guidelines range is not binding on the Court." [*Id*. at 24]. There was no deficient performance here.

Even if Ramirez could somehow establish deficient performance on the part of counsel, he can clearly show no prejudice. Petitioner acknowledges, as he must, that he was fully advised of the statutory minimum and maximum sentences which apply to his case. That information is set out clearly in his plea agreement, [Doc. 37 at 1, 2]. He was also clearly informed by the Court that he faced a 15 year mandatory minimum sentence for Courts 1 and 5 (ten years on Count 1, five years consecutive on Court 5). Ramirez affirmatively acknowledged that he understood that he faced "a mandatory minimum sentence of 15 years in federal prison" and that the Court, absent a government motion for downward departure, would "have absolutely no discretion to impose any sentence less than the 15 year mandatory minimum sentence required by statute." [Doc. 99 at 17]. Although the Guidelines range was 181 to 211 months, the Court varied from the range and imposed the 180 month mandatory minimum sentence. No advice from counsel about the guidelines range would have changed that.[6] In other words, petitioner can show no prejudice under the second prong of *Strickland*.

Claim One is without merit.

### B.     Claim Three-Failure to File Suppression Motion

On April 7, 2011, a co-conspirator, Rene Rosales, acting at the direction of law enforcement agents met with Ramirez at petitioner's residence and recorded the conversation. During the recorded conversation, petitioner said he had just transported five kilograms of cocaine from California to Tennessee, that he had one kilogram at his house (which Rosales

---

[6] That conclusion is made more firm when considered in the context of petitioner's sworn testimony that he wanted to plead guilty even though he was aware that the Court had "the authority to impose a life term of imprisonment." [Doc. 99 at 23].

observed), and that the other four kilograms were stored at a location approximately 30 minutes away. [Doc. 37 at ¶ 5(g)]. Rosales made arrangements to purchase one-half kilogram of cocaine from petitioner in a transaction to take place at petitioner's residence, [*Id*. at ¶ 5(h)].

On April 8, 2011, a federal search warrant was executed at petitioner's residence, [*Id*. at ¶ 5(i)]. Ramirez was fully apprised of his rights and executed a *Miranda* waiver. One kilogram of cocaine was found in petitioner's basement and petitioner told agents the locations of an additional 2.5 kilograms of cocaine and three firearms, [*Id*.]. Petitioner agreed to show agents the location and signed a consent to search form. Using a key provided by petitioner, agents entered a trailer in Limestone, Tennessee and found 2.5 kilograms of cocaine, two loaded 9 mm handguns, and an AK-47 assault rifle in close proximity to each other in the bedroom of the trailer. [*Id*.].

Petitioner now claims that he informed the agents of the location of the trailer and its contents only because of threats and promises made to petitioner. More specifically, petitioner claims that the agents (unnamed) threatened they "would arrest his mother and other members of his family and put them in jail alleging that they were in a drug conspiracy with Movant" and promised "they would assist him in getting a lesser sentence if he would assist them immediately." These "threats" and "promises," according to petitioner, induced him to waive his *Miranda* rights despite his initial request for counsel. Ramirez claims counsel was ineffective for failing to file a motion to suppress on this basis.

The government responds that the suppression motion would have been meritless and counsel could not have been ineffective in not filing it. The government argues that "[p]etitioner has not established that counsel had any legitimate basis to seek suppression," apparently on two bases. First, the government argues that any issue related to petitioner's consent to the search of

his residence is immaterial in light of the federal search warrant already procured by agents.[7] Second, "the record indicates that the agents would have obtained a search warrant if petitioner had withheld his consent" for the search of the Limestone house.

Failure to file a suppression motion may be ineffective assistance, *Kimmelman v. Morrison*, 477 U.S. 365 (1986); however, a failure to file a suppression motion is not ineffective assistance *per se*. *Id*. In order to meet his burden of proving ineffective assistance of counsel for not filing a motion to suppress, Ramirez must first show that counsel's failure fell below the objective standard of reasonableness, and he "must also prove that his Fourth Amendment claim is meritorious." *Id*. at 374-37. Conversely, if such a motion would fail, counsel may not be criticized for having accurately assessed his client's chances of successfully challenging the [search]." *Worthington v. United States*, 726 F.2d 1089, 1093-94 (6th Cir. 1984) (Conti, concurring). In other words, "whether trial counsel . . . acted incompetently . . . depends upon the merits of the search and seizure question." *Id*.

Petitioner's claim thus turns on the question of whether he can prove that a motion to suppress his statements related to the Limestone house would have been successful. Ramirez asserts that he invoked his right to counsel when agents attempted to question him when they executed the federal search warrant on April 8, 2011. Unnamed agents advised petitioner of the incriminating evidence found in the residence and asked for information about "more cocaine, weapons, and other incriminating evidence." [Doc. 96 at 6]. Ramirez claimed he was innocent and again unnamed agents told him: (1) a witness had given them sufficient facts to support a search warrant;[8] (2) "the agents would arrest his mother and members of his family and put them

---

[7]    As noted below, the Court liberally considers petitioner's claim to relate to information provided about the Limestone stash house, not the actual residence of Ramirez searched on April 8.

[8]    The Court construes this liberally to mean that police officers falsely told Ramirez that a witness had given them sufficient information to get a search warrant for the Limestone stash house. It appears that, although agents had

in jail alleging that they were in a drug conspiracy with" Ramirez; and (3) they would "assist him in getting a lesser sentence or charges if he would assist them immediately." [*Id*. at 7]. As a result of these "threats and coercive tactics," petitioner told agents of the location of his stash house where 2.5 kilograms of cocaine and three guns were located, agreed to show them the house, and signed a consent to search form, thus allowing the agents "to obtain evidence that they were unaware of at a residence they were also unaware of." [*Id*.]

In its essence, it appears that Ramirez claims he invoked his right to remain silent and asked for an attorney. Then, however, as a result of the agents coercive tactics and promises, he waived his *Miranda* rights and made highly incriminating statements which led to the recovery of substantial evidence against him. It is beyond dispute that suspects have the right to invoke their right to remain silent and assert a right to counsel. The Supreme Court has said: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1996); *see also Dickerson v. United States*, 530 U.S. 428 (2000). Once the right to counsel is asserted, a subject in custody may not be interrogated outside counsel's presence "unless the accused himself institutes further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Likewise, the agents may not engage in the "functional equivalent" of express questioning by making statements or conversation designed to elicit a response from the accused. *Rhode Island v. Innis*, 446 U.S. 291 (1980). A suspect's volunteered statements, however, are not barred by the Fifth Amendment. *Id*.; *see also Estelle v. Smith*, 451 U.S. 454, 469 (1981); *United States v. Murphy*, 107 F.3d 1199, 1204-05 (6th Cir. 1997); *United*

---

reason to believe that there was other cocaine in another location, they did not yet know the location of the Limestone house where it was stored. Search warrants must describe the *place* to be searched with particularity to comply with the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

*States v. Montano*, 623 F.2d 147, 149 (6th Cir. 1980) (defendant's voluntary statements **without pressure** or questioning by an interrogator not implicated by *Miranda*) (emphasis added).

Did agent threats and promises render petitioner's subsequent waiver of his *Miranda* rights and statements to police involuntary and thus procured in violation of the Fifth Amendment?  They could have.  The standard was summarized by the Sixth Circuit in *United States v. Hunter*, 332 Fed. App'x 285 (6th Cir. 2009):

> . . . "An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).  This Court has established three requirements for a finding that a confession was involuntary due to police coercion:  (i)  the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).  This Court determines whether a defendant's statement to police was voluntary by examining "the totality of the circumstances." *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993).

*Id*. at 288-89.  It is also reasonably clear that a threat to arrest a family member could cause statements to be involuntary.

> "[A] finding of coercion need not depend upon actual violence by a government agent; a credible threat is sufficient." *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S. Ct. 1246 113 L.Ed.2d 302 1991.  "Specifically, threats to arrest members of a suspect's family may cause a confession to be involuntary." *Finch*, 998 F.2d at 356.  Whether a threat to prosecute a third party is coercive "turns on the issue of whether the threat could have been lawfully executed." *United States v. Johnson*, 351 F.3d 254, 263.  In *Finch*, police officers executing a search warrant at the defendant's residence, at which his mother and girlfriend were also present, told the defendant that if the defendant did not disclose the location of his drugs, the officers were to arrest all three of them; the defendant then immediately told the police where the drugs were. *Finch*, 998 F.2d at 355.  In reversing the district court's denial of the defendant's motion to suppress, this court noted that all three of

16

the *Mahan* factors were present: The police had no probable cause to arrest either woman, the interrogation occurred in an "inherently oppressive" atmosphere in which the occupants were detained in the residence by five others drawing guns, and the defendant's testimony that the officers' threat motivated him to confess was supported by the fact that he confessed immediately after the threat was made. *Id*. at 355-56.

*Id*. at 289.

In *Johnson*, police executed a search warrant at the defendant's half-sister's residence, where the defendant stayed on occasion, and found cocaine hidden in the headboard of the sister's bed. The police then lured the defendant back to the sister's residence by threatening to arrest her if the defendant did not admit ownership of the drugs. The defendant returned and confessed but then subsequently claimed that his confession was involuntary. The court reasoned that "the question [of] whether the threat to prosecute [the sister] was coercive turns on the issue of whether the threat could have been lawfully executed." *Johnson*, 351 F.3d at 263. To answer that question, the court looked to whether the officers had probable cause to believe that the sister was involved in the crime. *Id*. at 260-63.

In some circumstances, a police officer's promise can also constitute coercion that renders a defendant's statements involuntary. *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). More particularly, police promises of leniency can be objectively coercive. *Johnson*, 351 F.3d at 261 (citing *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992) (stating "that a promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary.")). Such promises "may be coercive if they are broken or illusory." *Johnson*, 351 F.3d at 262.

Finally, it may be that a police officer's deception may render an accused's statement involuntary. *See Ledbetter v. Edwards*, 35 F.3d 1062 (6th Cir. 1994). The Supreme Court has held, however, that police deception does not always implicate the voluntariness of a statement.

*See Illinois v. Perkins*, 496 U.S. 292, 297 (1990) (*Miranda* forbids coercion, not mere strategic deception . . .").  To ascertain whether a particular tactic is unconstitutional, the court must examine the "totality of the circumstances" of each case.  *Ledbetter*, 35 F.3d at 1067.

The government's response on this issue consists of one page and largely misses the point of petitioner's argument.[9]  The government correctly cites case law that "[t]rial strategy includes the decision not to file certain motions if, after investigation, [counsel concludes that] doing to would not be necessary or advantageous."  [Doc. 104 at 10 (quoting *United States v. Hinds*, 2 Fed. App'x 420, 423 (6th Cir. 2001)].  Yet this record contains nothing which would allow the Court to find that trial counsel made such a strategic decision, ***after investigation***.  The government likewise correctly states that "failure to bring a meritless suppression motion cannot constitute ineffective assistance."  [*Id.* (quoting *Brown v. McKee*, 231 Fed. App'x 469, 475 (6th Cir. 2007) (quoting *United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999))].  Yet, as illustrated above, the record does not contain sufficient information from which the Court can find that a suppression motion would have been meritless.  As a result, the Court concludes that an evidentiary hearing is required on this claim.  The Court will therefore appoint counsel to represent petitioner, will order that the United States Marshal to return petitioner to this district[10], and will schedule the necessary evidentiary hearing.[11]

---

[9]  The government characterizes petitioner's argument as suggesting "that he was coerced into consenting to a search and that he was deprived of his right to counsel and right against self-incrimination."  [Doc. 104 at 10].  The government then analyses those claims in three sentences.

[10]  The Bureau of Prisons' Inmate Locator, www.bop.gov/inmateloc./ shows that petitioner is currently housed at USP Lompac, 3901 Cline Boulevard, Lompac, CA 93436.

[11]  It may well be that petitioner can show no prejudice from counsel's alleged deficient performance as to the drug count; however, it appears the only evidence obtained by the government as to the firearms resulted from Ramirez's own statements.  In his reply to the government's arguments about prejudice with respect to the failure to file a suppression motion, petitioner makes the disconnected assertion that counsel was ineffective because he "failed to assist Defendant cooperating with the government in order to obtain a sentence reduction pursuant to U.S.S.G. § 5K1.1 for substantial assistance to the government and failed to attend debriefing meeting with Defendant . . ." [Doc. 107 at 4].  This claim is raised for the first time in petitioner's reply and consists of nothing more than a conclusory statement.  The Court will therefore not consider the claim further.

18

## C.      Claim Two-Failure to Investigate

Petitioner asserts in this claim "that counsel's failure to investigate any defense for Movant was also ineffective assistance of counsel." [Doc. 96 at 4]. More specifically, petitioner claims that counsel did not investigate the circumstances surrounding the matters discussed in the prior section related to the possible motion to suppress, did not investigate the firearm count to determine whether there was any nexus between the firearms and the drug offense (i.e., whether Ramirez was guilty of the firearms offense), and did not contact potential witnesses or conduct any investigation to "put the Government's case to any test." [*Id*. at 5].

Because petitioner's claim of lack of investigation related to the suppression issue is so intertwined with that issue, the Court will defer ruling on that claim until after the evidentiary hearing. As to the remaining failure to investigate claims, however, each suffers the same fatal flaw. Petitioner provides no evidence from which the Court can possibility conclude that counsel was deficient since he does not describe the additional investigation that could have been done, nor does he identify the potential witnesses who could have been interviewed.

"The focus in failure-to-investigate claims . . . is the reasonableness of [counsel's] investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91. [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690. But "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Id*. at 691.

It can hardly be argued by petitioner that counsel's investigation was deficient when he identifies no promising avenues of investigation not followed by counsel. There is simply nothing in the record to establish that additional investigation of any kind would have yielded any arguable defense in the case or in any way have "put the government's case to [ ] test." The same is true with respect to the unnamed "potential witnesses" referred to by petitioner. There is nothing in the record to suggest that counsel's failure to investigate further or interview unnamed witnesses was objectively unreasonable, especially in light of the highly deferential standard of *Strickland*.

In addition, Ramirez cannot meet the second prong of the *Strickland* test. To meet the second prong, Ramirez must show prejudice, i.e., that the outcome would have been different but for counsel's ineffective assistance. Even if counsel's performance was deficient, relief will not be granted unless petitioner was actually prejudiced. *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005). Bare allegations of prejudice are not sufficient; the petitioner must produce enough evidence to demonstrate a reasonable probability that the outcome would have been different. Petitioner does not identify what, if anything, could have been learned from further investigation by counsel or what information could have been learned from interviews with these unnamed witnesses. He has produced no statement or affidavit from any potential witness which indicates that the witness was available or willing to testify or the substance of the anticipated testimony. Without such information, which petitioner must produce, the Court cannot, even giving petitioner the benefit of every doubt, conclude that counsel could have learned anything which would have changed the outcome. The claims of ineffective assistance of counsel for failure to investigate and interview potential witnesses lacks merit.

### D.    Claim Four-Sufficiency of the Evidence (Count 5)

In this claim, petitioner asserts that the evidence was not sufficient to show that he "used these weapons in furtherance of ANY drug offenses," but rather "here the evidence showed that Movant did not intend to have the firearm[s] available during or subsequent to the transaction, did not embolden the Movant, or were the weapons even within a mile of the transaction!" [Doc. 96 at 11, 14]. This claim fails for two reasons.

First, by pleading guilty, petitioner waived his right to challenge the sufficiency of the evidence. *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008). And, the Sixth Circuit has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (citing *United States v. Shields*, 291 F.2d 798 (6th Cir.), *cert. denied* 368 U.S. 933 (1961)). Second, even if sufficiency of the evidence can be reviewed on collateral review, the evidence was sufficient to sustain the conviction.

Section 924(c)(1)(A)(i) of Title 18 of the United States Code provides that any person "who, in furtherance of a [drug trafficking] crime, possesses a firearm, shall, in addition to the punishment provided for [the] drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than five years." To prove that possession was "in furtherance of" the drug trafficking crime, the government must show a "specific nexus between the gun and the crime charged" and that the firearm "was strategically located so that it is quickly and easily available for use." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Other factors to consider include: (1) "whether the gun was loaded," (2) "the type of weapon," (3) "the legality of its possession," (4) "the type of drug activity conducted," and (5) "the time and circumstances under which the firearm was found." *Id*.

Petitioner testified at the change of plea hearing that he was pleading guilty to the firearms offense, Count 5, because he was "in fact, guilty." He stipulated that he told agents he had approximately 2.5 kilograms of cocaine and three guns at the Limestone location. Upon searching the trailer, agents located the cocaine, along with two loaded handguns and the AK-47. All three firearms were located in close proximity to the cocaine, in the same trailer and the same bedroom. The bed in the bedroom had several cupboard type drawers built into the headboard. The drawer on the left side contained the cocaine; the drawer on the right side contained the two loaded .9mm handguns. The AK-47 was leaning against a wall in the corner of the bedroom in plain view. Such evidence is very clearly sufficient to sustain a 924(c) conviction.

Claim Four lacks merit.

## IV. Conclusion

For the reasons set forth above, petitioner's Claims One, Two (except for the claim related to the suppression motion), Three and Four lack merit and the § 2255 motion will be DENIED as to those claims. The Court will order an evidentiary hearing with respect to Claim Three related to the failure to file a suppression motion. The Court will enter final judgment in this matter after the evidentiary hearing and the Court's resolution of the claim which is the subject of that hearing. The Court will also defer any determination of whether a certificate of appealability should issue as to any claim until the remaining claims are resolved.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
